IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THOMAS G., ) | |
| ) | |
|       **Plaintiff,** ) | |
| ) | No. 20-cv-5860 |
| v. ) | |
| ) | Magistrate Judge Jeffrey I. Cummings |
| KILOLO KIJAKAZI, Acting ) | |
| Commissioner of Social Security,[1] ) | |
| ) | |
|       **Defendant.** ) | |

### MEMORANDUM OPINION AND ORDER

Thomas G. ("Claimant") brings a motion to reverse the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Disability Insurance Benefits (DIBs). The Commissioner brings a motion for summary judgment seeking to uphold the decision to deny benefits. The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. §636(c). This Court has jurisdiction to hear this matter pursuant to 42 U.S.C. §405(g). For the reasons that follow, Claimant's motion to reverse the decision of the Commissioner, (Dckt. #14), is granted and the Commissioner's motion for summary judgment, (Dckt. #19), is denied.

**I.    BACKGROUND**

    **A.    Procedural History**

On January 17, 2018, Claimant (then forty-eight years old) filed an application for DIBs, alleging disability dating back to August 1, 2016. (Administrative Record ("R.") 13). His claim was denied initially and upon reconsideration. (*Id.*). Claimant filed a timely request for a

---

[1] In accordance with Internal Operating Procedure 22 - Privacy in Social Security Opinions, the Court refers to plaintiff only by his first name and the first initial of his last name. Acting Commissioner of Social Security Kilolo Kijakazi has also been substituted as the named defendant. Fed.R.Civ.P. 25(d).

1

hearing, which was held on September 17, 2019, before Administrative Law Judge ("ALJ") Kimberly S. Cromer. (R. 28-86). On December 9, 2019, the ALJ issued a written decision denying Claimant's application for benefits. (R. 10-27). Claimant filed a timely request for review with the Appeals Council. On July 29, 2020, the Appeals Council denied Claimant's request for review, leaving the decision of the ALJ as the final decision of the Commissioner. (R. 1-6). This action followed.

### B. The Social Security Administration Standard to Recover Benefits

To qualify for disability benefits, a claimant must demonstrate that he is disabled. An individual does so by showing that he cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Gainful activity is defined as "the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. §404.1572(b).

The Social Security Administration ("SSA") applies a five-step analysis to disability claims. 20 C.F.R. §404.1520. The SSA first considers whether the claimant has engaged in substantial gainful activity during the claimed period of disability. 20 C.F.R. §404.1520(a)(4)(i). At step two, the SSA determines whether the claimant has one or more medically determinable physical or mental impairments. 20 C.F.R. §404.1521. An impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Id.* In other words, a physical or mental impairment "must be established by objective medical evidence from an acceptable medical source." *Id.*; *Shirley R. v. Saul*, 1:18-cv-00429-JVB, 2019 WL 5418118, at *2 (N.D.Ind. Oct. 22, 2019). If a claimant establishes that he has one or more physical or mental impairments,

the ALJ then determines whether the impairment(s) standing alone, or in combination, are severe and meet the twelve-month duration requirement noted above. 20 C.F.R. §404.1520(a)(4)(ii).

At step three, the SSA compares the impairment or combination of impairments found at step two to a list of impairments identified in the regulations ("the listings"). The specific criteria that must be met to satisfy a listing are described in Appendix 1 of the regulations. 20 C.F.R. Pt. 404, Subpt. P, App. 1. If the claimant's impairments meet or "medically equal" a listing, he is considered disabled, and the analysis concludes. If a listing is not met, the analysis proceeds to step four. 20 C.F.R. §404.1520(a)(4)(iii).

Before addressing the fourth step, the SSA must assess the claimant's residual functional capacity ("RFC"), which defines his exertional and non-exertional capacity to work despite the limitations imposed by his impairments. The SSA then determines at step four whether the claimant is able to engage in any of his past relevant work. 20 C.F.R. §404.1520(a)(4)(iv). If the claimant can do so, he is not disabled. *Id*. If the claimant cannot undertake his past work, the SSA proceeds to step five to determine whether a substantial number of jobs exist that the claimant can perform in light of his RFC, age, education, and work experience. The claimant is not disabled if he can do work that is available under this standard. 20 C.F.R. §404.1520(a)(4)(v).

  C. **The Evidence Presented to the ALJ**

Claimant seeks disability benefits due to limitations stemming from psoriatic arthritis, psoriasis, degenerative lumbar disk, high blood pressure, neck pain, migraine headaches, tinnitus, and anxiety disorder. (R. 271). Because the Court's decision relates only to the ALJ's assessment of Claimant's mental limitations, it will limit its discussion of the evidence accordingly.

Claimant was treated for depression and anxiety by Lee Weiss, M.D., from June 2017 through December 2017. During Claimant's initial visit, Dr. Weiss noted that he had a long history of panic disorder with agoraphobic tendencies. (R. 545). Although Claimant had little success with medication at first, he had "done very well for the past [eight] years on Effexor and Klonopin." (*Id.*). At his initial appointment with Dr. Weiss, Claimant was oriented; his short-term, remote, and recent registration memory were intact; he displayed intact judgment and insight; and his attention span, ability to concentrate, and thought processes were described as normal. (R. 546). Claimant had similarly unremarkable examinations on September 13, 2017, (R. 543), and December 6, 2017, (R. 540).

Despite Dr. Weiss's findings, June 28, 2018 treatment notes from Claimant's primary care provider indicated worsening anxiety and described Claimant as "agitated." (R. 804). In an August 2, 2019 function report, Claimant's treating rheumatologist, Darcy Majka, M.D., opined that his "severe" anxiety would exacerbate his functional limitations. (R. 754). She also stated that Claimant's symptoms, together, would frequently interfere with the attention and concentration needed to perform simple work tasks. (R. 753).

Furthermore, in a function report he completed on February 3, 2018, Claimant indicated that he requires reminders to take his medicines, (R. 297), and reported problems getting along with others due to "irritability" from fatigue, (R. 300). Claimant also indicated that his impairments affect his concentration, but not his memory or understanding. (R. 300). He indicated that he does not handle stress or changes in routine well. (R. 301).

State agency consultant Ellen Rozenfeld, Psy.D., reviewed Claimant's file on March 17, 2018. (R. 94). She found that Claimant had: (1) no limitation in his ability to understand, remember, or apply information; (2) a mild limitation in interacting with others; (3) no limitation

4

in concentration, persistence, and pace; and (4) a mild limitation in his ability to adapt or manage himself. (R. 93). She deemed Claimant's anxiety to be non-severe. (R. 94). State agency consultant Joseph Cools, Ph.D., reviewed Claimant's file on August 10, 2018, and concurred with Dr. Rozenfeld's findings. (R. 111).

### D. The ALJ's Decision

The ALJ applied the five-step inquiry required by the Act in reaching her decision to deny Claimant's request for benefits. At step one, she found that Claimant did not engage in substantial gainful activity from his alleged onset date of March 31, 2017, through his date last insured of September 30, 2019. (R. 15). At step two, the ALJ determined that Claimant suffered from the severe impairment of juvenile rheumatoid arthritis, psoriatic arthritis, rheumatoid arthritis, and degenerative disc disease of the cervical and lumbar spine. (*Id.*). The ALJ also found that Claimant had a "mild" limitation in each of the four broad areas of mental functioning known as the "paragraph B criteria" (understanding, remembering, or applying information; interacting with others; concentrating, persisting, and maintaining pace; and adapting or managing himself). (R. 16-17). Based on these findings, she concluded that Claimant's anxiety and depression were non-severe. (R. 17).

At step three, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled one of the Commissioner's listed impairments. (*Id.*). Before turning to step four, the ALJ determined that Claimant had the residual functional capacity ("RFC") to perform sedentary work with the following limitations:

> Could not climb ladders, ropes, or scaffolds, he could not work at unprotected heights or around hazardous machinery. [Claimant's] work could not involve commercial driving. He could occasionally climb ramps and stairs, balance, stoop, crouch, kneel, and crawl. He could occasionally reach overhead bilaterally. He could frequently handle and finger bilaterally. [Claimant] had to avoid concentrated exposure to extreme cold and heat, humidity, wetness, and pulmonary

> irritants. [Claimant] had to avoid concentrated exposure to vibration and he had to work on a flat, even surface.

(R. 17-18). Based on these conclusions, the ALJ found at step four that Claimant was capable of performing his past relevant work as a graphic designer. (R. 20). Additionally, the ALJ noted that prior to Claimant's fiftieth birthday on June 25, 2019 – when he became an individual closely approaching advanced age – Claimant could have performed the representative occupations of call out operator, final assembler, and addresser. (R. 21). As such, she found that Claimant was not disabled between his alleged onset date and his date last insured. (*Id.*).

## II.   STANDARD OF REVIEW

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court. Judicial review of an ALJ's decision is governed by 42 U.S.C. §405(g), which provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). "Substantial evidence is not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021), *quoting Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal quotation marks omitted). The Commissioner's decision must also be based on the proper legal criteria and free from legal error. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

A court reviews the entire record, but it does not displace the ALJ's judgment by reweighing the facts, resolving conflicts, deciding credibility questions, making independent symptom evaluations, or otherwise substituting its judgment for that of the Commissioner. *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011); *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Instead, the court looks at whether the ALJ articulated an "accurate and logical

bridge" from the evidence to her conclusions. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). This requirement is designed to allow a reviewing court to "assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). Thus, even if reasonable minds could differ as to whether the claimant is disabled, courts will affirm a decision if the ALJ's opinion is adequately explained and supported by substantial evidence. *Elder*, 529 F.3d at 413.

### III. ANALYSIS

#### A. The ALJ erred by failing to account for the limitations stemming from Claimant's mental impairments when she determined Claimant's RFC.

As stated above, the ALJ determined that Claimant's depression and anxiety were non-severe impairments that created "mild" limitations on his ability to perform work activities. (R. 16-17). Indeed, by finding that Claimant had a mild limitation in each of the four areas of mental functioning – understanding, remembering, and applying information; interacting with others; concentrating, persisting, and maintaining pace; and adapting or managing oneself – the ALJ found *greater* limitations than both state agency psychological consultants. Despite the ALJ's findings, however, the RFC included no restrictions to account for Claimant's non-physical impairments and the ALJ's RFC assessment was devoid of any explanation as to why.

Claimant now argues that the ALJ erred by determining his RFC in this fashion. (Dckt. #14 at 10). Because this argument has merit, the Court finds that a remand to the Social Security Administration is warranted and it will not address Claimant's remaining arguments. *See DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019) ("Because we determine that the ALJ did not properly evaluate DeCamp's limitations in concentration, persistence, and pace, we do not address DeCamp's other arguments."). The Court's decision in this regard is not a comment on the merits of Claimant's other arguments and he is free to assert them on remand.

7

"The RFC is an assessment of what work-related activities the claimant can perform despite [his] limitations." *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); *Murphy v. Colvin*, 759 F.3d 811, 817 (7th Cir. 2014). The task of assessing a claimant's RFC is reserved to the Commissioner. *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995). "When determining a claimant's RFC, the ALJ must consider the combination of *all* limitations on the ability to work, including those that do not individually rise to the level of a severe impairment, . . . [and] [a] failure to fully consider the impact of non-severe impairments requires reversal." *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010) (citation omitted; emphasis added); *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003).

Consequently, it is well-settled that the ALJ must incorporate all limitations arising from a claimant's mental impairments into his RFC, even if those mental impairments are non-severe and the limitations that they impose on the claimant's capabilities are minor. *See, e.g., DeCamp*, 916 F.3d at 675-76; *Yurt v. Colvin,* 758 F.3d 850, 857-59 (7th Cir. 2014); *John M. v. Kijakazi*, No. 19 cv 1595, 2022 WL 220384, *9-10 (N.D.Ill. Jan. 25, 2022); *Cheryl C. v. Berryhill*, No. 18 C 1443, 2019 WL 339514, at *3-4 (N.D.Ill. Jan. 28, 2019); *President v. Berryhill*, No. 17 C 4910, 2018 WL 4282053, at *3-4 (N.D.Ill. Sept. 7, 2018); *Hovi v. Colvin,* No. 12-C-169, 2013 WL 3989232, at *16 (W.D.Wis. Aug. 2, 2013) ("Courts in this circuit have consistently held that an ALJ's unexplained failure to include even mild limitations in concentration, persistence, and pace in the RFC warrants remand."). Incorporating such limitations into the RFC is critical because even "mild limitations in social functioning or concentration, persistence, or pace may preclude the ability to perform . . . skilled and semi-skilled work." *Cheryl C.*, 2019 WL 339514, at *3; *Hovi*, 2013 WL 3989232, at *16. Furthermore, a claimant's difficulties with memory and

8

concentration might impact or preclude his ability to perform even unskilled work. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010) (citing *Craft,* 539 F.3d at 677-78).

In this case, the Commissioner simply cites the step two analysis as evidence that "the ALJ fully took [Claimant's] non-severe mental impairments of anxiety and depression into account." (Dckt. #20 at 8). However, even the ALJ acknowledged that her step two analysis fell short of an RFC assessment, writing:

> The limitations identified in the 'paragraph B' criteria *are not a residual functional capacity assessment* but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process *requires a more detailed assessment* by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p). Therefore, the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis.

(R. 17) (emphasis added). Despite the promise of a "more detailed assessment," the ALJ's RFC analysis merely cited her step two findings, stating: "In terms of the claimant's mental impairments, the prior state agency determinations of not severe are persuasive. Additional evidence received at the hearing level does not show more than mild limitations in the 'paragraph B' criteria set forth above." (R. 20)

The ALJ's statement that her RFC assessment "reflects the degree of limitation" that she found in her "paragraph B" mental function analysis is insufficient to account for this lack of explanation. Indeed, the statement contains a fatal ambiguity that has resulted in remand in many other cases where ALJs have made similar declarations. As one court explained:

> It is unclear what the ALJ meant by saying that the RFC 'reflects' [her] Step 2 findings concerning [claimant's] mental limitations. [She] could have intended this to mean that the RFC was designed to incorporate the mild impairments identified at Step 2 even though they were not specifically mentioned in the RFC. [She] could also have meant that [she] considered the Step 2 limitations as part of the RFC analysis but found them too mild to warrant additional non-exertional restrictions.

9

*Muzzarelli v. Astrue*, No. 10 C 7570, 2011 WL 5873793, at *23 (N.D.Ill. Nov. 18, 2011); *see also Viviana R. v. Kijakazi*, No. 19-cv-07419, 2022 WL 3354840, at *5 (N.D.Ill. Aug. 12, 2022); *Anthony W. v. Kijakazi*, No. C 6209, 2022 WL 1062334, at *3 (N.D.Ill. Apr. 8, 2022) ("Courts in this circuit have found such language at the end of the step two analysis causes confusion.").

If the ALJ intended to incorporate restrictions caused by Claimant's mild mental limitations into the RFC, she was obligated to explain how she did so. Conversely, if the ALJ believed that the mild mental limitations did not merit a non-exertional limitation in the RFC, she was obligated to explain that conclusion. *Muzzarelli*, 2011 WL 5873793, at *23; *Anthony W.*, 2022 WL 1062334, at *3 ("While the Court generally reads the ALJ's decision as a whole, the ALJ here explicitly stated that the step two analysis did not constitute a mental RFC assessment. . . . [T]he Court will not overreach and ignore the ALJ's own words in an effort to read the opinion as a whole.").

The ALJ's failure to articulate one of these competing explanations leaves the Court unable to follow the basis of her reasoning and, therefore, requires remand so that the ALJ can make her rationale clear. *Id.*, at *23-24; *see also David K. v. Kijakazi*, No. 20-CV-1743, 2022 WL 2757695, at *4-5 (N.D.Ill. July 14, 2022); *Kathy A. v. Kijakazi*, No. 20-CV-2387, 2022 WL 2758001, at *4-5 (N.D.Ill. July 14, 2022); *Anthony W.*, 2022 WL 1062334, at *3-4; *Judy D.*, 2019 WL 3805592, at *3-5; *Charles B. v. Saul*, No. 18 C 1377, 2019 WL 3557055, at *4-5 (N.D.Ill. Aug. 1, 2019); *Iora P. v. Berryhill*, No. 18 C 3640, 2019 WL 1112272, at *3-4 (N.D.Ill. Mar. 11, 2019); *Jacqueline J. v. Berryhill*, No. 18 C 2401, 2019 WL 339588, at *3-4 (N.D.Ill. Jan. 28, 2019). Accordingly, on remand, the ALJ must either incorporate non-exertional restrictions into the RFC that account for Claimant's mild limitations in each of the four broad areas of mental functioning, or explain why such limitations are unwarranted.

Furthermore, even if the Court were to read the RFC to include Claimant's mild Step 2 limitations, "remand is still required because the ALJ failed to consider the aggregate impact of all of [Claimant's] severe and non-severe impairments." *Muzzarelli*, 2011 WL 5873793, at *23-24 (citing *Denton*, 596 F.3d at 423, and *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009)); *David K.*, 2022 WL 2757695, at *4 (same, citing cases); *Jacqueline J.*, 2019 WL 339588, at *4. As SSR-96-8p explains, "a non-severe impairment may not significantly limit a claimant's ability to work when viewed in isolation, but it can 'be critical to the outcome of a claim' when seen together with other limitations." *Muzzarelli*, 2011 WL 5873793, at *23.

## CONCLUSION

For the foregoing reason, Claimant's motion to reverse the Commissioner's decision to deny her DIBs, (Dckt. #14), is granted and the Commissioner's motion for summary judgment, (Dckt. #19), is denied. The decision of the Commissioner is reversed, and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

**ENTERED:** September 14, 2022

**Jeffrey I. Cummings**
**United States Magistrate Judge**